IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF:<br><br>KYLE J. LAMB and LACY LAMB,<br><br>                    Debtor(s). | CASE NO. BK20-40112<br><br>CHAPTER 7<br><br>ADV. NO. A20-4016 |
| KYLE J. LAMB,<br><br>                    Plaintiff(s)<br>vs.<br><br>NAVY FEDERAL CREDIT UNION,<br><br>                  Defendants(s). | |

## ORDER

Trial was held in Lincoln, Nebraska, on January 21, 2021, on the debtor's complaint to determine dischargeability of student loan indebtedness. John A. Lentz appeared for the plaintiff, and Michael P. Gaughan appeared for the defendant. This Order constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(I).

The plaintiff is seeking to discharge student loan debt. For the reasons discussed below, the plaintiff's complaint is denied.

### *BACKGROUND FACTS*

The evidence admitted at the trial was not subject to material dispute. The parties filed a Joint Stipulation of Facts before trial and the uncontroverted facts are as follows:

1. Plaintiff filed a Chapter 7 bankruptcy on January 24, 2020.

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§157 and 1334(b).

3. This matter is a core proceeding pursuant to 28 U.S.C. §157 and Plaintiff seeks determination of dischargeability of debts pursuant to 11 U.S.C. §523(a)(8) and Fed. R. Bankr. P. 7001(6).

4. Defendant, Navy Federal Credit Union is a Virginia Corporation with its principal office located in Vienna, Virginia.

5. The debt owed to Navy Federal Credit Union is a student loan owed by Plaintiff.

6. The debt Plaintiff owes to Defendant is for a private student loan, originating on, or about, February 6, 2019. The original loan amount was $52,290.50 with interest at 12.05%.

7. Defendant does not offer any loss mitigation programs for its student loans at this time, however, Defendant does offer forbearance upon application, subject to terms and conditions.

8. Plaintiff personally signed/executed all documents with Defendant in order to obtain the student loan.

9. As of August 3, 2020, the unpaid balance on the student loan is $57,745.77 (consisting of principal balance of $53,453.97 and $4,271.80 interest and fees of $20.00).

10. As of January 13, 2021, the payoff is $59,329.66.

11. Plaintiff last made payment on the loan with Defendant on, or about, November 18, 2019.

12. The student loan was incurred for higher educational expenses.

13. Plaintiff applied for the student loan under an educational loan program.

14. The funds from the student loan were disbursed under an educational loan program.

15. Plaintiff personally applied for the student loan.

16. Plaintiff represented that the funds from the student loan were obtained for educational purposes.

17. The funds from the student loan were disbursed by Defendant to Sallie Mae pursuant to a loan consolidation of educational loans.

18. Plaintiff promised to repay the funds disbursed pursuant to the student loan consolidation and received a benefit by accepting funds disbursed pursuant to the student loan.

19. Plaintiff has two dependent children.

20. Plaintiff has no physical, mental, or medical limitations, or conditions which would affect the ability to repay the student loan.

21. Plaintiff's spouse is a stay-at-home mother and intends to homeschool her children but has no present physical, mental, or medical limitations or conditions which would affect her ability to obtain full- or part-time employment in the future.

22. It is possible that Plaintiff could obtain a different position with his current employer, or acquire a part-time job on nights/weekends.

23. Plaintiff was granted a forbearance by Defendant on repayment on July 15, 2019, but said forbearance expired on November 14, 2019.

24. Plaintiff re-applied for a forbearance of the student loan in January 2020, but was denied because the forbearance policy of Defendant requires three payments be made, which Plaintiff cannot/did not make.

25. Plaintiff is 39 years old and supports his wife who is 37 years old and his two daughters who are 13 [now 14] years old and 8 years old.

26. Plaintiff is employed with the United States Department of Veteran Affairs as a Social Worker, GS-11.

27. Plaintiff's current rate of pay at GS-11 is $64,009.00, salary, with no overtime.

28. Plaintiff's gross monthly income is $5,316.13/month and he nets approximately $3,615.68 on average per month.

29. Plaintiff contributes approximately $233.91 per month to retirement.

30. Plaintiff also receives $1,881.25/month in VA disability income.

31. Plaintiff also has student loans with the U.S. Department of Education, however, these loans are currently in a loan forgiveness program because of Plaintiff's work as a social worker.

32. Plaintiff's loans with the U.S. Department of Education total approximately $87,338.14, and under the loan forgiveness program require 120 monthly payments prior to forgiveness.

33. Currently, Plaintiff's monthly payment to the U.S. Department of Education is $0.00 due to his income/income contingent repayment plan.

34. Plaintiff suffers from PTSD, irritable bowel syndrome, and knee/back/shoulder cartilage damage, which are all service-connected, and expenses associated therewith are covered by the VA and Federal Blue Cross Blue Shield as Plaintiff is a federal employee.

35. Plaintiff's spouse has a Bachelor of Science in Christian Ministry.

In addition to the uncontroverted facts set forth in the stipulation of the parties, the testimony at trial revealed additional uncontroverted facts:

36. After honorably serving this country as a member of the United States Marine Corps, Plaintiff spent five years obtaining his undergraduate and master's degrees in social work, which he completed in 2018. He financed both his education and living expenses for his family using a combination of the Montgomery GI Bill, federally insured student loans, and private student loans.

37. The loan at issue in this case is a loan made by Navy Federal to consolidate other previously disbursed private student loans.

38. At the time Plaintiff filed his Chapter 7 bankruptcy case, he had two vehicle loans. One for a Nissan in the amount of $416.00 and one for a motorcycle for $231.00. The Nissan was surrendered during the bankruptcy and Plaintiff replaced it with a Ford with a monthly payment of $292.00. Plaintiff's spouse drives a 2011 Nissan for which there is no car payment.

39. Plaintiff testified that he uses the motorcycle for its therapeutic benefits and stress relief.

40. During the same week the trial took place, Plaintiff began a part-time job at Bryan Health. Plaintiff testified that he expects to work 8 hours every weekend and will be paid a gross amount of $28.00 per hour.

41. In their bankruptcy schedules filed in January of 2020, Plaintiff and his spouse indicated that they anticipated federal and state tax refunds of approximately $7,475.00. However, Plaintiff testified that the actual refunds received were approximately $4,000.00 due to funds held back for payment of taxes on a retirement fund distribution in 2019. Anticipated tax refunds were not factored into Plaintiff's evidence.

42. Plaintiff's wages have increased dramatically since he completed his education. In his statement of financial affairs Plaintiff indicates that his earned wages in 2018 were approximately $13,221.00, and in 2019 were $34,068. Plaintiff's 2020 income is not found in the evidence. However, Plaintiff's interrogatory answers indicate that Plaintiff's rate of pay under the federal "GS" scale for a GS-11 employee commenced in June of 2020 at the annual rate of $64,009.00.

43. Both Plaintiff and his spouse testified that when their current apartment lease expires, they anticipate being able to reduce their rent expense from $1,800.00 per month to approximately $1,500.00 per month.

44. Plaintiff's spouse testified that with significant efforts, they are now breaking about even on their budget. However, that is without paying the loan to Navy Federal and without

making payments on their federal student loans for which payment is currently suspended.

## *DISCUSSION*

Dischargeability of student loans is governed by 11 U.S.C. § 523(a)(8), which provides, in relevant part, that a discharge under § 727 does not discharge an individual debtor from any debt for student loans[1] "unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents[.]" In contrast to many other types of debts, § 523(a)(8)'s exclusion of student loans from discharge is "self-executing" in the sense that, "[u]nless the debtor affirmatively secures a hardship determination, the discharge order will not include a student loan debt." *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 450 (2004). A debtor's obligation on a student loan remains unless there has been an express determination that the loan is dischargeable because it imposes an undue hardship on the debtor and the debtor's dependents.

A debtor seeking a determination that his educational loan debt is dischargeable under § 523(a)(8) bears the burden of proving, by a preponderance of the evidence, that repayment of the loan would impose an undue hardship on him or his dependents. *Parker v. Gen. Revenue Corp. (In re Parker)*, 328 B.R. 548, 552 (B.A.P. 8th Cir. 2005). "Undue hardship" is not defined in the Bankruptcy Code, so courts have devised their own methods of determining whether an undue hardship exists. In the Eighth Circuit, the "totality of the circumstances" test is used.

> We apply a totality-of-the-circumstances test in determining undue hardship under § 523(a)(8). Reviewing courts must consider the debtor's past, present, and reasonably reliable future financial resources, the debtor's reasonable and necessary living expenses, and "any other relevant facts and circumstances." The debtor has the burden of proving undue hardship by a preponderance of the evidence. The burden is rigorous. "Simply put, if the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt – while still allowing for a minimal standard of living – then the debt should not be discharged."

*Educ. Credit Mgmt. Corp. v. Jesperson (In re Jesperson)*, 571 F.3d 775, 779 (8th Cir. 2009) (citing *Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 554-55 (8th Cir. 2003)) (footnote omitted). Each category will be reviewed in turn.

---

[1]The parties are in agreement that the student loans at issue qualify as "educational loans" for purposes of 11 U.S.C. § 523(a)(8). The Court makes not independent finding in that regard.

- 5 -

*Past, Present, and Reasonably Reliable Future Financial Resources*.

Since graduating college and obtaining his master's degree, Plaintiff has been employed in his field of study as a social worker with the VA. He began working with the VA in Montana in the fall of 2018 and a year later moved to Nebraska to take a higher-paying job with the VA. At a little more than two years, Plaintiff's employment history since completing his education is relatively short. Even so, during the last two-year period, Plaintiff has increased his annual earnings from approximately $34,0000.00 in 2019 to approximately $64,000.00 currently. Of course, that does not mean Plaintiff can expect to continue such dramatic annual increases in salary. In fact, Plaintiff testified that he feels his salary will increase only with the cost of living in the future as there are limited advancement opportunities with the VA in his field beyond his current status as a GS-11 employee. That testimony, however, was presented simply as Plaintiff's opinion and was not supported by any direct evidence.

Plaintiff testified that he intends to continue working in the social work field for the VA for the foreseeable future in order to take advantage of the federal government's loan forgiveness program for public service. Under that program, the United States Department of Education will forgive the federal student loans after 10 years of service in a public service job and payments according to the Department's Income Contingent Repayment Plan. Plaintiff's current payment amount under that program is $0.00 per month. The evidence was not clear as to whether that zero payment was due to the payment calculations under the plan or due to Covid-19-related relief. In any event, Plaintiff will certainly be subject to a monthly payment of more than $0.00 during the remaining 7+ years of the repayment program with the Department of Education. The Court commends Plaintiff for taking advantage of the federal program to alleviate the burden of his federal loans which amount to over $87,000.00. Further, Defendant has not even suggested that Plaintiff should be seeking other more lucrative employment.

Based on the evidence, even if Plaintiff is unable to advance beyond the GS-11 pay scale in the near future, he did testify that he will be eligible for periodic step increases within the GS-11 grade. Each step increase, which may occur annually, represents approximately $2,000.00 of additional pay. Further, as a federal employee, Plaintiff will be eligible to receive annual cost-of-living pay adjustments. So, Plaintiff has the likelihood of earning modest pay increases on an annual basis going forward. In addition, Plaintiff makes voluntary contributions to a retirement plan in the amount of $233.00 per month.

The evidence also revealed that Plaintiff and his spouse have received significant tax refunds, due largely to the federal government's earned income tax credit and child tax credit. Those tax refunds were not reflected in Plaintiff's updated Schedule I (Fil. #23) that was received as evidence. Those tax refunds are certainly a significant source of financial resources available to Plaintiff. Unfortunately, no evidence was presented as to the anticipated refund amount for the 2020 tax year. For the 2019 tax year, the refund amount was approximately $7,500.00, but that was reduced due to taxes owed for a one-time IRA distribution taken in 2019.

Plaintiff's spouse earned her bachelor's degree in Christian Ministry in 2019. However, she has not worked in that field and her earning capacity is unknown. She began homeschooling their two children (currently ages 9 and 14) for the 2020-21 school year. She also has loans with

the Department of Education for which no payment is due at this time. No evidence was presented as to her potential loan payment or her earning capacity.

*Reasonable and Necessary Living Expenses.*

Plaintiff submitted updated schedules I and J (Fil. #'s 20 and 22) to reflect their monthly budget as of the time of trial. That budget shows a deficit between income and expenses of approximately $1,048 per month. That deficit includes the student loan payment owed to Defendant in the amount of $631.00. Some of the stated expenses will be discussed below.

Plaintiff and his family currently live in an apartment for which they pay approximately $1,860.00 per month in rent. Both Plaintiff and his spouse testified that they anticipate leaving the apartment when the lease expires and that they believe they can find suitable housing for approximately $1,500.00 per month. Assuming they are able to do so, their living expenses will decrease by approximately $300.00 per month in the not-too-distant future.

The budget also lists monthly expenses for "childcare and children's education costs" of $242.00 and "school activities" of $300.00. That is a total of $542.00 related to the children's education. The only evidence as to these expenses was testimony that the homeschool programs and materials cost approximately $1,700.00. There was no evidence presented as to the cost of other school-related activities. Plaintiff's spouse did testify that she recently discovered that the homeschool program and materials could be purchased "used" for an unspecified discount. Accordingly, it seems that the budgeted amount of $542.00 per month ($6,500.00/year) is substantially overstated in light of the evidence.

Plaintiff also has a Harley-Davidson motorcycle for which he pays $231.00 per month. Plaintiff testified that he and his therapist agree that riding the motorcycle provides therapeutic benefits that may help with his service-related trauma. However, no medical or other evidence was provided to support Plaintiff's testimony as to the necessity of the motorcycle expense and Plaintiff did not reaffirm his liability for the motorcycle debt in his bankruptcy case. Therefore, his payments for the motorcycle are voluntary. The Court certainly appreciates the potential therapeutic benefits of riding a Harley-Davidson, but insufficient evidence was provided to establish the debt for the motorcycle as a reasonable and necessary expense. Further, even if Plaintiff chooses to keep the motorcycle, the debt will eventually be paid off, freeing up $231.00 per month.

The budget also lists transportation expenses (gas and maintenance) of $400.00 per month or $4,800.00/year. As indicated, Plaintiff's spouse does not work outside the home. Plaintiff did not testify as to any extraordinary commute to and from work, but did testify that he uses a government vehicle to travel between work locations. No other evidence was presented to support the $400.00 per month figure.

Much of the testimony dealt with medical expenses — particularly co-pays for therapist and other doctor visits, existing and potential orthodontia costs, etc. The budget shows $500 per month for such expenses which appear to be more than sufficient based on the testimony.

The student loan at issue carries an interest rate of 12.05%. That is an interest rate that seems quite high by current standards. Plaintiff did not testify and no evidence was provided as to any efforts to re-finance the loan with a lower interest rate to lower the monthly payment. The only evidence in that regard is the stipulation that Defendant does not have any loss-mitigation programs available for this loan at this time.

Finally, the Court notes that the budgeted expenses include $250.00 for miscellaneous expenses. Certainly, estimating monthly expenses is a difficult task as many expenses are a moving target. So, some amount for miscellaneous expenses is reasonable.

*Other Relevant Facts and Circumstances.*

At 39 years old and less than three years removed from obtaining his advanced degree, Plaintiff is young and has the prospect of many more years in the workforce. Due to a prior forbearance, the loan at issue has little or no payment history. Further, Plaintiff and his family's financial situation has changed dramatically, for the better, over the last year or so. Plaintiff and his spouse have done an admirable job in taking the necessary steps to improve their finances. Plaintiff sought employment with the VA in a field that will qualify him for Department of Education debt forgiveness on an accelerated basis. He moved his family to Nebraska for a better-paying job within the VA and got out from under a burdensome home loan in Montana with a deed in lieu of foreclosure. He recently began part-time weekend work for additional income. He surrendered a vehicle in bankruptcy and replaced it with a less-expensive one. They have looked at further reducing housing expenses and have found ways to reduce the cost of homeschool programs.

Plaintiff does have some permanent health issues for which he receives a significant VA disability payment along with free health care through the VA. The rest of Plaintiff's family is relatively healthy and there was no evidence of any permanent medical or mental health issues, although there are current treatments in place that are covered by insurance (other than co-pays). There is no evidence that medical expenses will increase over time.

As discussed above, the budget set forth in the updated Schedules I and J show a monthly deficit of more than $1,000.00. However, as also discussed above, that deficit appears to be overstated. Once Plaintiff's new part-time income and annual tax refunds are factored into the income side of the equation (as well as annual step raises and cost-of-living adjustments), along with the likely $300 reduction in housing expense and the various other expense reductions discussed above (education expenses, motorcycle debt, transportation expense, miscellaneous expenses), the stated deficit is eliminated. It is also possible that further expense reductions could be obtained by exploring refinance and interest rate reduction options for the student loan.

Plaintiff had the burden of proof. To obtain a discharge of his student loan, he had the burden of proving undue hardship by a preponderance of the evidence — and the burden is rigorous. *Jesperson*, 571 F.3d at 779. Here, there are too many questions as to available sources of income and the necessity of certain expenses to say that Plaintiff has met his burden. Given the

plaintiff's age and the likelihood that he will be able to work for 25 or more years, his advanced degree, his stable government job, his family's good health, as well as the likelihood that many listed expenses are overstated or unnecessary, the Court finds that Plaintiff has not met his burden of proving undue hardship by a preponderance of the evidence.

That said, and to reiterate my statements during trial, I again thank the Plaintiff for his service to this country and to the United States Marine Corps. I personally understand that service members and their families have unique burdens imposed by service-related disabilities from combat trauma — both mental and physical. I truly admire how Plaintiff and his spouse have faced their burdens, dealt with financial setbacks, and have begun re-building their financial life. All the more impressive is that they have done so while Plaintiff is pursuing a career in public service helping other military veterans adjust to civilian life. I certainly wish I had the power to discharge student loans based solely on my admiration for the Plaintiff and his family. Alas, I do not--and unfortunately, the law does not allow me to discharge the loan at issue under the facts of this case.

IT IS ORDERED: For the foregoing reasons, the Plaintiff's complaint is denied. The student loan indebtedness owed by the Plaintiff to the Defendant is not subject to discharge under the provisions of 11 U.S.C. § 523(a)(8). Separate judgment will be entered.

Dated: February 1, 2021.

BY THE COURT:

/s/Thomas L. Saladino
Thomas L. Saladino
Chief Judge

Copies provided by the court to:
*John A. Lentz
Michael P. Gaughan
U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.